IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 27, 2015 Session

## STATE OF TENNESSEE v. VICTORIA MONQUETTE ORR

**Appeal from the Circuit Court for Williamson County**
**No. ICR087503     Michael Binkley, Judge**

———————————————

**No. M2015-00690-CCA-R3-CD – Filed April 8, 2016**

———————————————

D. KELLY THOMAS, JR., dissenting.

Because I cannot agree with the majority's conclusion that the evidence was sufficient to corroborate the accomplice's testimony implicating the Defendant in the crime, and, because I similarly disagree with the conclusion that the trial court's admission of Mr. Taylor's prior consistent statement was harmless error, I respectfully dissent.

The only independent evidence relevant to identity presented by the State was Mr. Qadir's description of the woman depicted on the video and the video itself. Notably, Mr. Qadir, who is a loss-prevention specialist and is highly motivated to identify the person responsible for the theft, testified that although he had watched the video <u>forty to fifty times</u>, he could not identify the Defendant as the woman on the video.[1] Mr. Qadir admitted that he could not see the woman's face, the shape of her nose, the color of her eyes, the distance between her eyes, or any distinctive marks on any part of her body. Although Mr. Qadir chased the suspects out of the store and into the parking lot, he stated that he never saw the female's face. Also, the perpetrators were not apprehended in the parking lot, and from the record it appears that there was no evidence linking the Defendant to the crime until after Mr. Taylor was arrested and gave a statement.

Likewise, my own review of the video footage leads me to the same conclusion: other than being able to tell that the woman on the video is a black female of a certain stature, there is absolutely nothing to point to the Defendant as the perpetrator. In fact, a full-body view of the woman is never visible on the video—her body from the waist down is obstructed by the store's display tables. I am aware that only slight corroboration is needed in order to support the conviction; however, "[e]vidence which

---

[1] On the other hand, Mr. Qadir was able to pick Mr. Taylor out of a photographic lineup. Indeed, Mr. Taylor is more visible on the store's video footage, and the camera zoomed in on Mr. Taylor's face several times, making him more readily identifiable.

merely casts a suspicion on the accused . . . is inadequate to corroborate an accomplice's testimony." State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997). I believe that where, as in this case, the corroborating identification evidence only shows a similarity in sex, race, and stature to the Defendant, the evidence can only be characterized as casting a suspicion on the accused and is insufficient to support the conviction. In my view, no rational juror could conclude beyond a reasonable doubt that the woman in the video was the Defendant.

Also, it should be noted that the majority's emphasis on the other details of the crime provided by Mr. Taylor which were corroborated by Mr. Qadir does not overcome the lack of evidence corroborating the identity of the Defendant as the perpetrator. See State v. Boxley, 76 S.W.3d 381, 387 (Tenn. Crim. App. 2001) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)) ("It is not enough to simply corroborate that a crime has been committed in a manner described by the accomplice[].").

As to the Defendant's second issue, the lack of sufficient evidence corroborating the Defendant's identity exacerbates the trial court's error in admitting Mr. Taylor's prior consistent statement. Mr. Taylor's testimony was the only evidence directly linking the Defendant to the crime, and his credibility was therefore a significant issue. Additionally, the prosecutor's closing argument informed the jury that Mr. Taylor's statement could itself be used to corroborate his trial testimony implicating the Defendant. Although the jury was instructed that accomplice testimony had to be corroborated by evidence "entirely independent of the accomplice's testimony," the prosecutor argued that Mr. Taylor's out-of-court prior consistent statement, which implicated the Defendant, could be used to corroborate Mr. Taylor's in-court testimony. In closing, the prosecutor made the following arguments to the jury:

> Another thing that corroborates what Mr. Taylor said is he said that when he was arrested on July 9th, that he talked to Officer Corey Kroeger and that he told Corey Kroeger the exact same thing that he told today on the stand. He also wrote a written statement and you can see that the written statement was written on July 9th like he said and everything he said in the written statement is consistent with what he told - - what he said today.

(Emphasis added). And in rebuttal argument the prosecutor said,

> And not only that, [Mr. Taylor's testimony is] consistent, it's consistent with the written statement that he wrote, it's consistent with what he told Officer Kroeger on the day he was arrested. All of that can even be considered corroboration for what he said today.

(Emphasis added). These statements went beyond merely pointing out the consistencies between the prior statement and Mr. Taylor's testimony—they conflated the consistencies with the idea that the prior statement could actually corroborate Mr. Taylor's in-court testimony. The evidence against the Defendant is far from overwhelming, and given the importance of Mr. Taylor's credibility and the prosecutor's improper statements in closing argument, I cannot conclude that the error in admitting the prior consistent statement was harmless.

Based on the foregoing, I would reverse the judgment of the trial court and dismiss the charge against the Defendant.

_____
D. KELLY THOMAS, JR., JUDGE